UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X

JA'CORI LEE BROWN,

                                     Plaintiff,             Civil Action No.:

             -   against   -

WAL-MART ASSOCIATES, INC., WALMART INC.,        **COMPLAINT**
SAM'S EAST, INC., SAM'S WEST, INC., and DENISE    **AND JURY TRIAL DEMAND**
CANGRO,

                                 Defendants.
--------------------------------------------------------------------X

       Plaintiff Ja'Cori Lee Brown ("plaintiff" or "Brown"), by and through his attorneys,

Shegerian & Associates, states and alleges as follows:

## PRELIMINARY STATEMENT

       1.       This is a civil action for damages and remedies by Brown against entity defendants

Wal-mart Associates, Inc. ("defendant" or "Wal-mart Associates"), Walmart Inc.,  ("defendant"

or "Walmart"), Sam's East, Inc. ("defendant" or "Sam's East"), Sam's West, Inc. ("defendant" or

"Sam's West"), collectively "defendants", "entity defendants", or "Sam's Club", and individual

defendant Denise Cangro ("defendant", "individual defendant", or "Cangro"),  for disability

discrimination, racial discrimination, and failure to provide reasonable accommodation under: (a)

Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e et seq., and its Amendments; (b)

the Americans with Disabilities Act,  42 U.S.C.A. §1201 et. seq.; and (c) the New York State

Executive Law § 296 *et seq.* ("The New York State Human Rights Law).[1]

       2.       Plaintiff Ja'Cori Lee Brown, an African-American employee at the Sam's Club

store in Medford, New York, was repeatedly denied reasonable accommodation for his disability,

Sickle Cell Disease, a genetic blood disorder that, among other things, makes plaintiff unusually

---

[1]      All claims directly against defendant Cangro are brought under the New York State
Human Rights Law.

sensitive to working in the heat or in the cold. Despite plaintiff's repeated requests to defendant Denise Cangro—the Sam's Club manager to whom he reported—to work indoors during hot or cold weather because of his condition, defendants neither provided the requested accommodation nor engaged in *any* process with Brown to determine the feasibility of accommodating his disability. Instead, defendants continued to assign Brown to work outdoors in elevated heat and in the cold, causing him to be hospitalized multiple times. Adding insult to literal injury, defendants penalized plaintiff for each hospitalization with the accrual of disciplinary attendance "points" for the shifts he missed while hospitalized. Defendants ultimately wrongfully terminated plaintiff after a three-day hospitalization precipitated by defendants forcing plaintiff to work outside in the cold. Defendants not only discriminated against Brown because of his disability, their failure to provide reasonable accommodation and decision to terminate plaintiff was influenced by racial discrimination: defendants treated Brown differently than other employees and other *disabled* employees because of his race.

3.     Plaintiff brings this action against defendants for economic, non-economic, compensatory, and punitive damages, pre-judgment interest, and costs and reasonable attorneys' fees, and such other and further relief as this Court deems equitable and just.

## JURISDICTION AND VENUE

4.     Jurisdiction is proper because defendants conduct business in New York and the acts and/or omissions giving rise to the causes of action alleged herein occurred in New York.

5.     Venue is proper in Suffolk County and this Court under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## ADMINISTRATIVE PROCEDURES

6.     Within the time prescribed by law, plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging violations of federal law, including, but not limited to, 42 U.S.C. §§ 2000e *et seq.* (Title VII), and 42 U.S.C.A. §12101 et. seq. (ADA), annexed hereto as **Exhibit "A."**

7.      The EEOC subsequently issued plaintiff a Notice of Right to Sue, received on or around July 10, 2020, attached hereto as **Exhibit "B".**

8.      On or around October 6, 2020, a copy of this Complaint was mailed to the New York State Division of Human Rights, the Attorney General's Office, and the New York State Department of Labor, thereby satisfying the notice requirements of the New York State Human Rights Law and N.Y. Civ. Rights § 40-d**.**

## **PARTIES**

9.      Plaintiff Ja'Cori Lee Brown is, and at all times mentioned in this Complaint was, a resident of the State of New York.

10.     Defendant Wal-mart Associates, Inc. is, and at all times mentioned in this Complaint was, authorized to operate by the State of New York and the United States government and authorized and qualified to do business in Suffolk County.

11.     Defendant Walmart Inc. is, and at all times mentioned in this Complaint was, authorized to operate by the State of New York and the United States government and authorized and qualified to do business in Suffolk County.

12.     Defendant Sam's East, Inc. is, and at all times mentioned in this Complaint was, authorized to operate by the State of New York and the United States government and authorized and qualified to do business in Suffolk County.

13.     Defendant Sam's West, Inc. is, and at all times mentioned in this Complaint was, authorized to operate by the State of New York and the United States government and authorized and qualified to do business in Suffolk County.

14.     Defendant Denise Cangro is, and at all times mentioned in this Complaint was, on information and belief, a resident of the State of New York.

15.     *Relationship of defendants:* All defendants compelled, coerced, aided, and/or abetted the discrimination and failure to accommodate alleged in this Complaint, which conduct is prohibited under Title VII of the Civil Rights Act of 1964,  the Americans with Disabilities Act, and the New York State Human Rights Law. All defendants were responsible for the events and damages alleged herein, including on the following bases:  (a) defendants committed the acts alleged; (b) at all relevant times, one or more of the defendants was the agent or employee, and/or

acted under the control or supervision, of one or more of the remaining defendants and, in committing the acts alleged, acted within the course and scope of such agency and employment and/or is or are otherwise liable for plaintiff's damages; (c) at all relevant times, there existed a unity of ownership and interest between or among two or more of the defendants such that any individuality and separateness between or among those defendants has ceased, and defendants are the alter egos of one another. Defendants exercised domination and control over one another to such an extent that any individuality or separateness of defendants does not, and at all times herein mentioned did not, exist.  Adherence to the fiction of the separate existence of defendants would permit abuse of the corporate privilege and would sanction fraud and promote injustice. All actions of all defendants were taken by employees, supervisors, executives, officers, and directors during employment with all defendants, were taken on behalf of all defendants, and were engaged in, authorized, ratified, and approved of by all other defendants.

16.     Defendants Wal-mart Associates, Inc., Walmart, Inc., Sam's East, Inc., and Sam's West, Inc. both directly and indirectly employed plaintiff as defined in the New York State Human Rights Law and the New York Labor code.

17.     In addition, all defendants compelled, coerced, aided, and abetted the discrimination, which is prohibited under New York State Human Rights Law.

18.     Finally, at all relevant times mentioned herein, all defendants acted as agents of all other defendants in committing the acts alleged herein.

## STATEMENT OF FACTS

19.     *Plaintiff's hiring:* Plaintiff Ja'Cori Lee Brown ("plaintiff" or "Brown") was hired as a Member Assistant by defendants Wal-mart Associates, Inc., Walmart Inc., Sam's West, Inc., and Sam's East, Inc. doing business as Sam's Club (collectively "defendants" or "Sam's Club") to work at the Sam's Club warehouse store located at 2950 Horseblock Rd. in Medford, New York on June 11, 2019.

20.     *Plaintiff's job performance:* Throughout his four-month employment with Sam's Club, Brown was qualified for his position and performed his duties in a professional and competent manner.

21.     *Plaintiff's protected status*: Brown is an African-American male who suffers from

-4-

Sickle Cell Disease, a genetic condition that substantially limits one or more of plaintiff's major life activities.

22.     Brown was hired by defendant Denise Cangro a manager and employee of Sam's Club in a supervisory position with the power to hire and terminate employment.

23.     During his interview for the position with Cangro, Brown disclosed that he suffered from Sickle Cell Disease and that he would have to take a day off from work every approximately two (2) months for a blood transfusion.

24.     Brown also disclosed in his interview that, due to the Sickle Cell Disease, he could not be outside in the fall or winter because exposure to cold could trigger the symptoms of the disease.

25.     Brown also disclosed in his interview that he had a prior history heat strokes related to the disease, and, due to the heat strokes, he could not work outside in the summer for extended periods.

26.     Cangro responded to Brown, in substance, that Cangro was willing to work with Brown regarding his disability so long as Brown gave Cangro sufficient notice to complete the schedule.

27.     In advance of Brown's regularly scheduled blood transfusion appointment on July 5, 2019, Brown gave notice to Cangro that he would need time off for the transfusion.

28.     Cangro refused to approve Brown's request to take July 5, 2019 off for his blood transfusion.

29.     Because Cangro had refused to approve Brown's request to take July 5, 2019 off for the blood transfusion, Brown had to reschedule his appointment to July 12, 2019, on a day he was not scheduled to work.

30.     In July, Brown received disciplinary attendance "points" in the Sam's Club employment system because his work schedule in the computer system was not the same as the written schedule that Sam's Club had given him. Sam's Club policy was that if an employee received too many attendance points in a rolling period, termination might result. Brown informed Cangro of the issue, noting that he had worked the shifts according to the written schedule Sam's Club had provided. Cangro told Brown that she would fix the issue and remove the erroneously issued points.

31.     Despite Brown's prior request at the time of his hiring that he not be scheduled to

work outside in hot weather due to the risk of heat stroke, during the week of July 17, 2019, Cangro twice instructed Brown to work outside in excessive heat to collect shopping carts from the parking lot.

32.     On July 27, 2019, Cangro again instructed Brown to work outside in hot weather for several hours. Working in the heat made Brown feel very sick, and he requested permission from the manager on duty, James (last name unknown), to leave early due to his condition. James approved the request.

33.     After arriving home on July 27, 2019, by late evening Brown realized that his condition was not improving and he went to the hospital where he was treated for approximately seven (7) hours.

34.     On July 28, 2019, Brown was discharged from the hospital in the early morning.

35.     Following his discharge, Brown went directly to Sam's Club to provide his discharge papers from the hospital along with a doctor's note advising that he should rest for the next two days.

36.     Brown presented the discharge papers and doctor's note to the manager on duty, Roger (last name unknown).

37.     Roger informed Plaintiff that Sam's Club did not accept doctor's notes.

38.     Roger also informed plaintiff that he had been issued disciplinary "points" for leaving his shift early on July 27, 2019.

39.     Brown followed medical advice and rested at home on July 28, 2019 and July 29, 2019.

40.     Despite the doctor's note, when Brown returned to work he was penalized additional attendance points for having missed his shift.

41.     In late July or early August, Brown was verbally reprimanded multiple times for listening to music through headphones while on break by manager John Liccardi. Brown observed Liccardi similarly reprimand other African-American employees for listening to music while on break. However, Brown also observed Liccardi treat a Caucasian employee who was listening to music differently – not reprimanding him, but rather asking the Caucasian employee what kind of music he was listening to and not instructing the employee to stop listening to music.

42.     On August 8, 2019, Brown's backpack disappeared from the employee break room. Brown asked Cangro to check the surveillance cameras installed in the break room. Cangro

-6-

denied Brown's request and explained to him that the cameras did not work. Brown subsequently learned from other employees that the cameras did, in fact, work.

43.     On or around July 14, 2019, Brown requested time off for a medical appointment related to his Sickle Cell Disease scheduled for on or around August 23, 2019. Cangro verbally approved plaintiff's request.

44.     The week of August 23, 2019, Brown discovered that he had been scheduled to work on the day of his medical appointment. Brown informed Cangro of the scheduling conflict. Cangro told Brown, in substance, that he would have to find coverage for his shift on his own or be penalized by receiving attendance points.

45.     Brown was unable to find coverage for his shift on or around August 23, 2019 and called out of work to attend the medical appointment. Upon his return to work, he was issued a write-up for missing his shift.

46.     On or around October 5, 2019, Brown told Cangro once again that, due to his Sickle Cell Disease, he could not continue to work outside in the cold and again requested to be transferred indoors. Cangro responded that this was the first time that she had heard of Brown's illness or that he had restrictions on his ability to work in hot or cold weather. Cangro told Brown that, because she had just transferred a co-worker inside, she could not lose two employees from outside at once. She denied his request.

47.     On information and belief, the other employee that had been transferred indoors did not have a disability or other restriction that prevented him from working outside.

48.     Immediately after Cangro denied Brown's accommodation request, a co-worker named Kimberly (last name unknown), who had witnessed the interaction, intervened and said to Cangro, in Brown's presence, that she had heard Brown previously make requests to Cangro to be transferred indoors due to his medical condition. Cangro again denied that she had previously been aware of Brown's illness and repeated that Brown would not be transferred indoors.

49.     On October 14, 2019, Brown was again scheduled to work outside despite his multiple requests to Cangro for an accommodation. Unfortunately, Brown became very ill from working outside that day and he was hospitalized on October 15, 2019.

50.     Brown was hospitalized at Stony Brook Hospital for three days. During his hospitalization, Brown's sister, Leia Brown, called Sam's Club to let Sam's Club know that Brown was in the hospital. A representative of Sam's Club told Leia Brown that Ja'Cori Brown's

PTO (paid time off) would be used to cover the shifts that he missed.

51.     On October 17, 2019, Brown was discharged from Stony Brook Hospital.

52.     On October 18, 2019, Brown returned to work at Sam's Club. Brown brought with him paperwork regarding his hospitalization. He was verbally told by a manager named Tina (last name unknown) that he would not be penalized for missing work for medical reasons.

53.     On October 21, 2019, Brown was called into the office by Cangro to have a meeting regarding Brown missing work. Brown explained that he had been in the hospital due to his Sickle Cell Disease from being assigned to work out in the cold.  Cangro informed him that Brown's PTO would not cover the two days he had missed work due to his hospitalization. Cangro also told Brown that he had accumulated too many attendance points.

54.     The attendance points Cangro referred to included points Sam's Club's computer system had assessed in July for Brown working according to the written schedule he had been given which did not match up with what was in the computer—Cangro had never corrected the issue and removed the erroneously assigned points as she had told Brown she would.

55.     Cangro told Brown that he had too many attendance points, and, said in substance, "I'm sorry Cori, but because of your sickness and you missing work I have to terminate you." Cangro then terminated Brown's employment with Sam's Club.

56.     Brown subsequently heard from other Sam's Club employees that Cangro has said that Brown had quit, or that he had gone on a leave of absence, neither of which was true.

57.     Cangro terminated Brown on October 21, 2019 because of his disability and without engaging in a good faith interactive process to accommodate that disability.

58.     Cangro's decision to discriminate against Brown on the basis of his disability, decision not to attempt to engage in a good faith interactive process to accommodate his disability, and decision not to take any action to consider the feasibility of a reasonable accommodation for Brown's disability, were influenced by Brown's race.

59.     Because of Brown's race, Cangro treated Brown differently than other Sam's Club employees with disabilities, specifically, by discriminating against him because of his disability, refusing to provide reasonable accommodation for his disability or engage in a good faith interactive process regarding his request for accommodation, and by terminating him because of his disability.

60.     Because of Brown's race, Cangro failed to follow Sam's Club policies, including

-8-

but not limited to policies requiring that Sam's Club employees not discriminate on the basis of disability, and that Sam's Club managers and/or supervisors engage in an individualized, good faith interactive process regarding an employee's request for accommodation of a disability.

61.    *Economic damages:* As a consequence of defendants' conduct, Brown has suffered and will suffer harm, including lost past and future income and employment benefits, damage to his career, and lost wages, overtime, unpaid expenses, and penalties, as well as interest on unpaid wages at the legal rate from and after each payday on which those wages should have been paid, in a sum to be proven at trial.

62.    *Non-economic damages:*  As a consequence of defendants' conduct, Brown has suffered and will suffer psychological and emotional distress, humiliation, and mental and physical pain and anguish, in a sum to be proven at trial.

63.    *Punitive damages:*  The conduct of defendants was outrageous and malicious, was intended to injure plaintiff, and was done with reckless indifference to Brown's protected civil rights, entitling plaintiff to an award of punitive damages against defendants.

64.    *Attorneys' fees:*  Brown has incurred and continues to incur legal expenses and attorneys' fees.

## FIRST CAUSE OF ACTION

**Violation of the Americans with Disabilities Act ("ADA") of 1990 and its Amendments, 42 U.S.C. § 12101 *et seq*. for Discrimination Based on Plaintiff's Disability; Failure to Provide Reasonable Accommodations - Against All Entity Defendants**

65.    The allegations set forth in the foregoing paragraphs are re-alleged and incorporated herein by reference.

66.    At all times herein mentioned, the ADA and its amendments, were in full force and effect and was binding on defendants. This law, and corresponding regulations, prohibit disability discrimination and requires defendants to provide reasonable accommodations to employees who they know are disabled.

67.    Plaintiff's Sickle Cell Disease constitutes a disability within the meaning of the ADA.

68.    Plaintiff, at all times relevant, was able to perform in a reasonable manner the activities involved in his job upon the provision of reasonable accommodations. For example, an

employee in the same position as plaintiff, who did not have a disability, was transferred by defendants to work indoors. Assigning plaintiff to work indoors was thus a reasonable accommodation available to defendants that would not create an undue burden on Sam's Club.

69.     Defendants wholly failed to attempt any reasonable accommodation of plaintiff's known disability (i.e. his Sickle Cell Disease limiting major life activities including, but not limited to, physical activity outside in hot or cold temperatures). Instead, defendants terminated plaintiff's employment based on his disability, request for disability leave, and retaliated against plaintiff for seeking to exercise rights guaranteed under the ADA and its amendments and/or opposing defendants' failure to provide such rights, including rights of reasonable accommodation, leave rights, intermittent leave rights, and/or the right to be free of discrimination, in violation of the ADA and its amendments.

70.     Under the ADA, after plaintiff requested accommodation, defendants were obligated to engage in a good faith interactive process with plaintiff in order to address and accommodate his disability, including a duty to investigate a feasible accommodation for plaintiff's disability.

71.     At all times relevant, defendants knew of plaintiff's disability yet never initiated the required interactive, individualized process. Instead, defendants denied plaintiff's request for reasonable accommodation and discriminated against plaintiff for informing defendants of his disability and requesting accommodation from his employer. Plaintiff believes, and on that basis alleges, that his disability, the need to accommodate that disability, and his request for accommodation were substantial motivating factors in defendants' termination of his employment.

72.     As a proximate result of defendants' discrimination against plaintiff based on his disability, plaintiff has suffered and continues to suffer substantial losses, including the loss of past and future earnings and employment benefits together with attorneys' fees and expenses.

73.     As a further proximate result of defendants' actions, plaintiff has suffered and continues to suffer impairment and damage to plaintiff's good name and reputation by defendants.

74.     As a further proximate result of defendants' actions, plaintiff has suffered and continues to suffer severe and lasting embarrassment, humiliation and anguish, and other incidental and consequential damages and expenses.

75.     The conduct of defendants was willful, outrageous, malicious, intended to injure

plaintiff, and was done with reckless indifference to plaintiff's protected civil rights and the requirements of federal law, entitling plaintiff to an award of punitive damages.


## SECOND CAUSE OF ACTION

**Violation of the Americans with Disabilities Act ("ADA") of 1990 and its Amendments, 42 U.S.C. § 12101 *et seq*. for Retaliation Against Plaintiff for Requesting Accommodation of His Disability - Against All Entity Defendants**

76.     The allegations set forth in the foregoing paragraphs are re-alleged and incorporated herein by reference.

77.     Plaintiff engaged in the protected activity of requesting accommodation for his disability, Sickle Cell Disease, specifically by 1) informing Cangro at his interview that he could not work outside when it was hot or when it got cold, and 2) asking Cangro on multiple occasions to be transferred indoors where he would not be exposed to hot or cold temperatures that could trigger symptoms of his Sickle Cell Disease.

78.     Defendants were alerted of plaintiff's requests for reasonable accommodation and plaintiff was terminated from his employment because defendants retaliated against him.

79.     As a proximate result of defendants' retaliation against plaintiff, plaintiff has suffered and continues to suffer substantial losses, including the loss of past and future earnings and employment benefits together with attorneys' fees and expenses.

80.     As a proximate result of defendants' willful, knowing, and intentional retaliation against plaintiff, plaintiff has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to his damage in a sum according to proof.

81.     Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

82.     Defendants' conduct constitutes malicious, willful, wanton, and/or reckless indifference to Plaintiff's protected rights, and this entitles plaintiff to punitive damages against defendants.

**THIRD CAUSE OF ACTION**

**Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e et seq., and its Amendments for Race Discrimination/Disparate Treatment - Against All Entity Defendants**

83.     The allegations set forth in the foregoing paragraphs are re-alleged and incorporated herein by reference.

84.     Defendants' conduct, as alleged, violated Title VII, U.S.C.A. § 2000e *et seq* and its Amendments. Defendants committed unlawful employment practices, including by the following bases for liability:

- Taking adverse employment actions against plaintiff, such as discharging, barring, refusing to transfer, retain, hire, select, and/or employ, and/or otherwise discriminating against plaintiff, in whole or in part on the basis of plaintiff's race in violation of Title VII, U.S.C.A. § 2000e *et seq* and its Amendments;

- Plaintiff's race was a motivating factor in defendants' decision not to provide plaintiff a reasonable accommodation, not to engage plaintiff in a good faith interactive process regarding his request for a reasonable accommodation, and to terminate plaintiff's employment and/or take other adverse employment actions against plaintiff including penalizing him with attendance points.

85.     As a proximate result of defendants' willful, knowing, and intentional discrimination against plaintiff, plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

86.     As a proximate result of defendants' willful, knowing, and intentional discrimination against plaintiff, plaintiff has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to his damage in a sum according to proof.

87.     Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

88.     Defendants' conduct constitutes malicious, willful, wanton, and/or reckless indifference to Plaintiff's protected rights, and this entitles plaintiff to punitive damages against

defendants.

## FOURTH CAUSE OF ACTION

**Violation of New York State Human Rights Law for Disability**

**Discrimination - Against All Defendants**

89.     The allegations set forth in the foregoing paragraphs are re-alleged and incorporated herein by reference.

90.     The New York Executive Law §296(1)(a) provides that: "It shall be an unlawful discriminatory practice for an employer or licensed agency, because of the age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse or hire or employ or to bar or to discharge from employment such individual in compensation or in terms, condition or privileges of employment."

91.     Defendants' conduct, as alleged, violated the New York State Human Rights Law, including but not limited to, N.Y. Exec. Law § 296.  Defendants committed unlawful employment practices, including but not limited to, the following bases for liability:

- Taking adverse employment actions against plaintiff such as discharging, barring, refusing to transfer, retain, hire, select, and/or employ, and/or otherwise discriminating against plaintiff, in whole or in part on the basis of plaintiff's disability and/or other good faith complaints in violation of the New York State Human Rights Law, including but not limited to, N.Y. Exec. Law § 296;

- Failing to engage plaintiff in a good faith interactive process regarding his request for accommodation in violation of the New York State Human Rights Law, including but not limited to, N.Y. Exec. Law § 296;

- Harassing plaintiff and/or creating a hostile work environment in whole or in part on the basis of plaintiff's disability and/or good faith complaints in violation of the New York State Human Rights Law, including but not limited to, N.Y. Exec. Law §296;

- Failing to take all reasonable steps to prevent discrimination, harassment, and retaliation based on Plaintiff's disability and/or other good faith complaints, and/or

other protected characteristic or activity in violation of the New York State Human Rights Law, including but not limited to, N.Y. Exec. Law § 296;

- Plaintiff's disability, and/or good faith complaints protected by the New York State Human Rights Law, including but not limited to, N.Y. Exec. Law § 296, were motivating factors in defendants' decision to terminate plaintiff's employment, not to retain, hire, or otherwise employ plaintiff in any position, and/or to take other adverse job actions against plaintiff.

92.     Defendants' conduct, as alleged, violated the New York Civil Rights Law, including but not limited to, N.Y. Civ. Rights § 40-c by subjecting plaintiff to discrimination in his civil rights and/or to harassment.

93.     As a proximate result of defendants' willful, knowing, and intentional discrimination against plaintiff, plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

94.     As a proximate result of defendants' willful, knowing, and intentional discrimination against plaintiff, plaintiff has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to his damage in a sum according to proof.

95.     Defendants' conduct constitutes malicious, willful, wanton and/or reckless indifference to plaintiff's protected rights, entitling plaintiff to punitive damages against defendants.


**FIFTH CAUSE OF ACTION**

**Violation of New York State Human Rights Law for Failure to**

**Provide Reasonable Accommodations to Known Disability -**

**Against All Defendants**

96.     The allegations set forth in the foregoing paragraphs are re-alleged and incorporated herein by reference.

97.     The New York Executive Law §296(3)(a) provides that: "It shall be an unlawful discriminatory practice for an employer . . . to refuse to provide reasonable accommodations to the known disabilities, or pregnancy-related conditions, of an employee, prospective employee or member in connection with a job or occupation sought or held or participation in a training

program."

98.     Plaintiff's Sickle Cell Disease is a disability within the meaning of the New York State Human Rights Law.

99.     Defendants had notice of the disability, both at the time of plaintiff's hiring, and through plaintiff's repeated requests for accommodation of his disability.

100.     Plaintiff could perform the essential functions of his position at Sam's Club with the requested accommodation.

101.     Defendants refused to make such accommodations.

102.     Defendants' conduct, as alleged, violated the New York State Human Rights Law, including but not limited to, N.Y. Exec. Law § 296(3)(a).

103.     As a proximate result of defendants' willful, knowing, and intentional failure to provide reasonable accommodations, plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

104.     As a proximate result of defendants' willful, knowing, and intentional failure to provide reasonable accommodations, plaintiff has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to his damage in a sum according to proof.

105.     Defendants' conduct constitutes malicious, willful, wanton and/or reckless indifference to plaintiff's protected rights, entitling plaintiff to punitive damages against defendants.


### SIXTH CAUSE OF ACTION

**Violation of New York State Human Rights Law for Retaliation for Requesting Reasonable Accommodation - Against All Defendants**

106.     The allegations set forth in the foregoing paragraphs are re-alleged and incorporated herein by reference.

107.     Defendants' conduct, as alleged, violated the New York State Human Rights Law, specifically N.Y. Exec. Law sections 296(1)(e) and 296(7), and defendants committed unlawful employment practices, including by the following, separate bases for liability: retaliating against plaintiff, including by assessing him attendance "points" for missing shifts due to his disability

and refusing to correct a computer error with his work schedule that erroneously assigned him attendance points, and ultimately terminating his employment for seeking to exercise rights guaranteed under the New York State Human Rights Law and/or for opposing defendants' failure to provide such rights, including the right to be free from discrimination and harassment based on disability, and the right to engage in the interactive process, in violation of New York State Human Rights Law sections 296(1)(e) and 296(7).

108.    Plaintiff engaged in the protected activity under the NYSHRL of opposing Cangro's failure to provide reasonable accommodation for his disability, Sickle Cell Disease, specifically by disagreeing with Cangro on or about October 5, 2019 when Cangro told plaintiff, in substance, that this was the first time plaintiff had informed her of his illness.

109.    As a proximate result of defendants' willful, knowing, and intentional discrimination and retaliation against plaintiff, plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

110.    As a proximate result of defendants' willful, knowing, and intentional discrimination and retaliation against plaintiff, plaintiff has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to his damage in a sum according to proof.

111.    Defendants' conduct constitutes malicious, willful, wanton and/or reckless indifference to plaintiff protected rights, entitling plaintiff to compensatory damages against defendants.

## SEVENTH CAUSE OF ACTION

**Violation of New York State Human Rights Law for Race Discrimination –
Against All Defendants**

112.    The allegations set forth in the foregoing paragraphs are re-alleged and incorporated herein by reference.

113.    The New York Executive Law §296(1)(a) provides that: "It shall be an unlawful discriminatory practice for an employer or licensed agency, because of the age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse or hire or employ or to

bar or to discharge from employment such individual in compensation or in terms, condition or privileges of employment."

114.   Defendants' conduct, as alleged, violated the New York State Human Rights Law, including but not limited to, N.Y. Exec. Law § 296.  Defendants committed unlawful employment practices, including but not limited to, the following bases for liability:

- Taking adverse employment actions against plaintiff such as discharging, barring, refusing to transfer, retain, hire, select, and/or employ, denying request for reasonable accommodation, refusing to engage in a good faith interactive process in response to plaintiff's request for reasonable accommodation, and/or otherwise discriminating against plaintiff, in whole or in part on the basis of plaintiff's race and/or other good faith complaints in violation of the New York State Human Rights Law, including but not limited to, N.Y. Exec. Law § 296;

- Harassing Plaintiff and/or creating a hostile work environment in whole or in part on the basis of Plaintiff's race and/or good faith complaints in violation of the New York State Human Rights Law, including but not limited to, N.Y. Exec. Law §296;

- Failing to take all reasonable steps to prevent discrimination, harassment, and retaliation based on, plaintiff's race and/or other good faith complaints, and/or other protected characteristic or activity in violation of the New York State Human Rights Law, including but not limited to, N.Y. Exec. Law § 296;

- Plaintiff's race, and/or good faith complaints protected by the New York State Human Rights Law, including but not limited to, N.Y. Exec. Law § 296, were motivating factors in defendants' decision to terminate plaintiff's employment, not to retain, hire, or otherwise employ plaintiff in any position, and/or to take other adverse job actions against plaintiff including, but not limited to, failing to provide plaintiff reasonable accommodation for his disability and failing to engage in a good faith interactive process in response to plaintiff's request for reasonable accommodation.

115.   Defendants' conduct, as alleged, violated the New York Civil Rights Law, including but not limited to, N.Y. Civ. Rights § 40-c by subjecting plaintiff to discrimination in his civil rights and/or to harassment.

116.     As a proximate result of defendants' willful, knowing, and intentional discrimination against plaintiff, plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

117.     As a proximate result of defendants' willful, knowing, and intentional discrimination against Plaintiff, Plaintiff has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to his damage in a sum according to proof.

118.     Defendants' conduct constitutes malicious, willful, wanton and/or reckless indifference to plaintiff's protected rights, entitling plaintiff to punitive damages against defendants.

## **PRAYER FOR RELIEF**

WHEREFORE, plaintiff, JA'CORI LEE BROWN, respectfully requests that this Honorable Court grant judgment, as follows:

A declaratory judgment that the actions, conduct and practices of defendant(s) complained of herein violated the laws of the United States and State of New York;

For general and special damages according to proof;

For pre-judgment and post-judgment interest on all damages awarded;

For reasonable attorneys' fees;

For costs of suit incurred;

For an award of punitive damages in an amount to be determined at trial;

For such other and further relief as the Court may deem just and proper.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

///

///

///

///

///

-18-

Dated:  October 6, 2020                    SHEGERIAN & ASSOCIATES


                              By:  *Scott William Clark*
                                   _____
                                   SCOTT WILLIAM CLARK, ESQ.
                                   *Attorney for Plaintiff*
                                   JA'CORI LEE BROWN
                                   90 Broad Street, Suite 804
                                   New York, NY 10004
                                   Tel.: (212) 257-8883
                                   Fax: (212) 257- 8883

# EXHIBIT A

# SHEGERIAN & ASSOCIATES

June 25, 2020

**Sent Via Electronic Mail: newyfaxenf@eeoc.gov**
**And Fax to: (212) 336-3790**

EEOC New York District Office
33 Whitehall Street, 5th Floor
New York, NY 10004

**Re:  Our Client Jacori Lee Brown**

To Whom It May Concern:

     This letter is to serve as notice that this law firm has been retained to represent Jacori Lee Brown in connection with his employment with and separation from employment with Sam's West Inc., Walmart Associates, Inc. and Walmart Inc., doing business as Sam's Club.

     Time is of the essence and, as such, we are requesting that your office immediately issue a Notice of Right to Sue in connection with the above matter.  Please find enclosed a Charge of Discrimination (EEOC Form 5) and Statement of Facts.

     Should you have questions regarding the foregoing, please feel free to contact me directly.

Very truly yours,

**SHEGERIAN & ASSOCIATES**

Zarrina Ozari, Esq.

Enclosures (EEOC Form 5, Statement of Facts)

Phone: (212) 257-8883  |  Fax: (212) 804-7299  |  www.shegerianlaw.com

145 S Spring Street, Suite 400    225 Santa Monica Boulevard, Suite 700    6205 Lusk Boulevard, Suite 200    650 California Street, Suite 4-137    90 Broad Street, Suite 804
Los Angeles California 90012    Santa Mónica, California 90401    San Diego, California 92121    San Francisco, California 94108    New York, NY 10004

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974.  See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA  ☒ EEOC | |

| | EEOC |
|---|---|

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| **MR. JACORI LEE BROWN** | (631)295-8359 | 05/28/1996 |

| Street Address | City, State and ZIP Code |
|---|---|
| 40 Johns Neck Road, Shirley, New York 11967 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others.  (*If more than two, list under PARTICULARS below.*)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| SAM'S WEST INC., | **100+** | |

| Street Address | City, State and ZIP Code |
|---|---|
| 2950 Horseblock Road, Medford, NY 11763 | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| WALMART ASSOCIATES, INC., WALMART INC. | **100+** | |

| Street Address | City, State and ZIP Code |
|---|---|
| 2950 Horseblock Road, Medford, NY 11763 | |

DISCRIMINATION BASED ON (Check appropriate box(es).)

☒ RACE  ☒ COLOR  ☐ SEX  ☐ RELIGION  ☒ NATIONAL ORIGIN
☒ RETALIATION  ☐ AGE  ☒ DISABILITY  ☐ GENETIC INFORMATION
☒ OTHER (Specify) Harassment, Failure to promote or to prevent discrimination/retaliation

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: July 2019    Latest: October 2019
☒ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I.   I believe that I have been discriminated against due to my race and my disabilities and in retaliation for participating in a protected activity, in violation of, including but not limited to, Title VII, ADA, FMLA the Civil Rights Act of 1866, 42 U.S.C. section 1981, Civil Rights Act of 1991

II.  **Race:** I was treated differently than other similarly situated employees because of my race.

III. **Disability:** I was subjected to discrimination and harassment because of my disability. I suffered the sickle cell disease.

IV.  My employer did not make any substantial efforts to accommodate my disabilities.

V.   I was fired without cause and as retaliation for complaining about discrimination I experienced.

** PLEASE SEE THE ATTACHED STATEMENT OF FACTS FOR DETAILS ON THE ABOVE CHARGES**

| I want this charge filed with ▇ the EEOC ▇▇▇▇▇ I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| 6/22/2020    *Charging Party Signature* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |
| Date | |

EEOC Form 5 (11/09)

| # CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974.  See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA  ☒ EEOC | |

| | ■ EEOC |
|---|---|

THE PARTICULARS ARE (*If additional paper is needed, attach extra sheet*

** PLEASE SEE THE ATTACHED STATEMENT OF FACTS FOR DETAILS ON THE ABOVE CHARGES**

| I want this charge filed with both the EEOC and the State or local Agency, if any.  I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| **6/22/2020** _____ Date       *Charging Party Signature* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (*month, day, year*) |

STATEMENT OF FACTS – JACORI LEE BROWN

A. **Hiring**

1. On June 11, 2019, I was hired as a Member Assistant by Sam's West Inc., Walmart Associates, Inc., and Walmart Inc. doing business as Sam's Club ("Sam's Club").

B. **Discriminatory Conduct**

2. During my interview at hiring, I disclosed to my manager, Denise (last name unknown), that I suffered from the sickle cell disease and informed her that I had to take time off from work every ten (10) months for blood transfusion. I also told Denis that due to my health condition, I could not be outside in the Fall or Winter because it could trigger symptoms. Finally, I disclosed to Denise my prior history of heart strokes and explained that due to past strokes, I could not work outside in the Summer for extended periods. Denise responded that she was willing to work with me so long as I gave her enough time to complete the schedule.

3. On July 5, 2019, I had my regularly scheduled blood transfusion appointment. I requested to take time off in advance, but Denise refused to approve my request. As a result, I had to reschedule the appointment for July 12, 2019, the way I was off.

4. During the week of July 17, 2019, I was twice ordered to work outside in excessively hot weather to collect all carts from the parking lot, despite Denise's knowledge of my prior history of strokes caused by the heat.

5. On July 27, 2019, I was again instructed to work outside, in excessively hot weather, for several hours. Working in the heat made me feel incredibly sick, so I left work prior to the end of my shift. Before leaving my shift, I notified a manager on duty, James (last name unknown) that I was feeling sick, and he approved my early departure from

work. Upon arriving home and taking a shower, I realized that my condition was not improving, so I immediately went to the hospital, where I spent about seven (7) hours.

6.   I was discharged from the hospital in the early morning of July 28, 2019. Following my discharge, I went straight to work to submit my discharge papers and a doctor's note advising that I should rest for the next two days. I submitted all documents to a manager who was on duty at the time of my arrival, Rodger (last name unknown). Roger told me that they do not accept doctor's notes. He also told me that I was issued points for leaving my shift early the day prior, regardless of leaving work for health reasons.

7.   On or around July 29, 2019, I rested at home, as advised in the doctor's note that I submitted to Sams's Club. Despite the doctor's note, I was given additional points for missing my shift that day.

8.   On August 8, 2019, my personal item (backpack) was stolen from the breakroom. I approached Denise and asked her to check the cameras installed in the breakroom. Denise refused to do so, explaining that the cameras did not work. I later learned that the cameras did, in fact, work and Denise intentionally lied to me.

9.   On or around August 23, 2019, I had a medical appointment for which I requested time off on or around July 14, 2019, and which was verbally approved by Denise. However, during the week of August 23, 2019, I discovered that I was scheduled to work that day. When I told Denise that I had an appointment and would be unable to work that day, she told me to either find coverage for my shift or be penalized by receiving points. Despite my best efforts, I was unable to find coverage for my shift. Due to medical necessity, I was forced to call out of work on the day of my appointment. Upon my

return to work, I was issued a write up for going to the appointment without Denise's approval.

10. On or around September 10, 2019, I approached a manager, Donna (last name unknown), concerning issues with my schedule. I explained that I was supposed to work part-time, and only the morning shifts, but instead, I was scheduled full-time for all evening shifts. Donna responded that if I agreed to work full-time, my schedule would be changed to morning shifts. Despite my agreement with the proposal, my schedule remained the same.

11. On or around October 5, 2019, I approached Denise and told her that due to my sickle cell condition, I cannot continue to work outside and requested to be transferred indoors. Denise responded that this was the first time she heard of my illness and that I had restrictions extending to avoiding working in the hot or cold weather. She then said that a coworker—that was hired two months after me—also requested a transfer and was approved. Denise concluded by stating that she could not lose two employees at once, hence, my transfer request is denied. A coworker, Kimberly (last name unknown), who witnessed the interaction, suddenly intervened and told Denise that she was lying about her lack of awareness of my medical condition because she personally heard me make numerous requests to transfer. Denise once again reiterated that she had never heard of my illness and that I was not getting transferred indoors.

12. On or around October 14, 2019, I was admitted to Stony Brook Hospital due to health issues and was admitted for three days (until October 16, 2019). I called Sam's Club and notified them about my admission to the hospital. I was told that my personal time off would be used to cover the days I miss.

13. On or around October 18, 2019, I returned to work and presented the hospital discharge papers to a manager on duty, Tina. I expressed my concern about receiving points in the past for missing work due to health issues and asked not to issue more points for missing work while I was in the hospital. Tina reassured me that I would not be penalized for the time I was sick.

C. **Termination**

14. On October 21, 2019, Denise called me into her office. I immediately explained to Denise that I missed my shift because I was admitted to the hospital between October 14 and October 16. I further explained that the experienced a sickle cell crisis and a severe infection in my chest caused by working in the cold. Denise told me that Sam's Club did not use my accrued PTO to cover the days I was absent, and instead, I was given five (5) additional points for absence. Denise further told me that I exceeded the maximum number of points allowed for absence and, therefore, she was terminating me. I reminded Denise that in July, she mistakenly gave me points for missing a shift for which I was present. I reminded her that she promised to fix it in the system but never did, and now those points were also counted against me. Denise responded that she could no longer make changes to the system and correct her mistake. Denise finally said, "I'm sorry, Cori, but because of your sickness and you missing work, I have to terminate you."

15. After my termination, I learned from my former coworkers that Denise falsely told to some workers that I quit my job and to others that I was on a leave of absence.

# EXHIBIT B



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**New York District Office**

33 Whitehall Street, 5th Floor
New York, NY 10004-2112
For General Information: (800) 669-4000
District Office: (212) 336-3620
General FAX: (212) 336-3625

**Via Email: sclark@shegerianlaw.com**
**and EEOC Portal**

**Jacori L. Brown**
**c/o Scott W. Clark, Esq.**
**SHEGERIAN & ASSOCIATES**
**90 Broad Street, Suite 804**
**New York, NY 10004**

RE:   Jacori Brown v. Walmart Inc. d/b/a Sam's Club
      EEOC # 520-2020-04179

Dear Mr. Brown:

This office is in receipt of your EEOC Charge of Discrimination and request for a *Notice of Right to Sue* on the above-referenced charge.

Ordinarily, a charging party or his/her counsel is not entitled to receive a *Notice of Right to Sue* upon request until the charge has been pending with the EEOC for at least 180 days. However, an early *Notice of Right to Sue* is authorized by 29 C.F.R. § 1601.28(a)(2) if the Director determines that the Commission will not be able to complete its administrative process within 180 days of the date the charge was filed.

We have reviewed all of the circumstances of this case and have determined that issuing you the requested *Notice of Right to Sue* is warranted at this time.

Enclosed is your *Notice of Right to Sue*. If you have any questions, please contact Investigator Maritza Rondon-Velazquez at (929) 506-5332.

On Behalf of the Commission,

_____ MRV          _____**7/10/2020**_____
**Judy A. Keenan**                              **Date**
**District Director**

Enc.

EEOC Form 161-B (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

# NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| To: | Jacori L. Brown<br>40 Johns Neck Road<br>Shirley, NY 11967 | From: | New York District Office<br>33 Whitehall Street<br>5th Floor<br>New York, NY 10004 |
|---|---|---|---|

☐  *On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **520-2020-04179** | **Maritza Rondon-Velazquez,**<br>**Investigator** | **(929) 506-5332** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

☐  More than 180 days have passed since the filing of this charge.

☒  Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☒  The EEOC is terminating its processing of this charge.

☐  The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

☐  The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS of your receipt of this Notice.** Otherwise, your right to sue based on the above-numbered charge will be lost.

☐  The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*Judy A. Keenan*    MRV                                      7/10/2020

Enclosures(s)                          **Judy A. Keenan,**          *(Date Mailed)*
                                        **District Director**

cc:

| Scott A. Forman, Esq.<br>LITTLER MENDELSON, P.C.<br>One Biscayne Tower<br>2 South Biscayne Blvd. Suite 1500<br>Miami, FL 33131<br>**(Walmart Inc. d/b/a Sam's Club)** | Scott W. Clark, Esq.<br>SHEGERIAN & ASSOCIATES<br>90 Broad Street,<br>Suite 804<br>New York, NY 10004 |
|---|---|

Enclosure with EEOC
Form 161-B (11/16)

### INFORMATION RELATED TO FILING SUIT
### UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court <u>under Federal law</u>.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS    --    Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice.  Therefore, you should **keep a record of this date**.  Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost.  If you intend to consult an attorney, you should do so promptly.  Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it.  Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction.  (Usually, the appropriate State court is the general civil trial court.)  Whether you file in Federal or State court is a matter for you to decide after talking to your attorney.  Filing this Notice is not enough.  You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief.  Courts often require that a copy of your charge must be attached to the complaint you file in court.  If so, you should remove your birth date from the charge.  Some courts will not accept your complaint where the charge includes a date of birth.  Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge.  Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office.  If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS    --    Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible.  For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit <u>before 7/1/10</u> – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008.  This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above.  Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice <u>and</u> within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION    --    Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer.  Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney).  Requests should be made well before the end of the 90-day period mentioned above, because such requests do <u>not</u> relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE    --    All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case.  If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice).  While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case.  Therefore, if you file suit and want to review the charge file, **please make your review request <u>within 6 months</u> of this Notice**.  (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

**NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA):**   The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

**If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.**

**"Actual" disability or a "record of" a disability (note: if you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability):**

➢ **The limitations from the impairment no longer have to be severe or significant** for the impairment to be considered substantially limiting.
➢ In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)),   **"major life activities"   now include the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system**.**
➢ **Only one** major life activity need be substantially limited.
➢ With the exception of ordinary eyeglasses or contact lenses, **the beneficial effects of "mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.
➢ An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or **"in remission"** (e.g., cancer) is a disability if it **would be substantially limiting when active**.
➢ An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months**.

**"Regarded as" coverage:**
➢ An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).
➢ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.
➢ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively *BOTH* transitory (lasting or expected to last six months or less) *AND* minor.
➢ A person is not able to bring a failure to accommodate claim *if* the individual is covered only under the "regarded as" definition of "disability."

***Note:   Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment.  Beyond the initial pleading stage, some courts will require specific evidence to establish disability.***  For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.